# SMITH v. BROOKS.

---

PATENTS; INTERFERENCE; LEADING QUESTIONS.

1. A delay of 2 years and 8 months after an alleged reduction to practice raises a strong presumption that what was done amounted to a mere abandoned experiment; but such presumption may be overcome by satisfactory proof that the machine was successfully operated.

2. Where one of the parties to an interference, and a witness skilled in the art, testified that such party's machine was successfully operated in 1896, and the machine in its present condition, although apparently dismantled by the removal of parts, supports their testimony, it will be regarded as a reduction to practice.

3. The comparative crudeness of an original construction as contrasted with subsequent machines is no ground for the refusal of the merit of operative success.

4. Testimony adduced by leading questions cannot be excluded unless objection to it has been promptly interposed, and, if admissible in the absence of such objection, will not be refused consideration.

No. 253.   Patent Appeals.   Submitted May 10, 1904.   Decided June 7, 1904.

HEARING on an appeal from a decision of the Commissioner of Patents in an interference case.                    *Affirmed.*

The facts are sufficiently stated in the opinion.

*Mr. Lloyd B. Wight* for the appellant.

*Mr. W. W. Dodge* and *Mr. Jacob Felbel* for the appellee.

Mr. Justice MORRIS delivered the opinion of the Court:

The subject-matter of controversy in this case, which is an appeal from a decision of the Commissioner of Patents in an interference case, is an invention in type-writing machines, stated in four several counts, as follows:

"1.  The combination of an endwise-movable carriage, a platen mounted thereon, and movable transversely to the line of travel and obliquely to the horizontal plane of the machine, means for at will so moving the platen transversely, a series of pivoted horizontally disposed key levers extending under the carriage and to the front of the machine, a series of type bars pivoted in front of the platen below the horizontal plane thereof and each of which swings on a single pivotal center, and normally inclined away from the platen toward the front of the machine, a segment arranged obliquely to a horizontal plane and on which said type bars are pivoted, two or more characters rigidly secured to each type bar and operative connections between each type bar and its corresponding key lever.

"2.  The combination of a platen movable endwise and transversely in a plane obliquely to the horizontal plane of the machine, means for at will moving the platen obliquely, transverse-

ly, a series of type bars pivoted in front of the platen and each swinging on a single pivotal center and having more than one character thereon, a segment arranged obliquely to a horizontal plane and on which said type bars are pivoted, a series of horizontally disposed key levers pivoted at the rear of the machine and extending forward under the platen and type bars, and operative connections between each key lever and its corresponding type bar.

"3. In a type-writing machine, the combination of a platen, a series of pivoted type bars, each provided with a plurality of types rigidly secured thereto, said type bars being pivoted in an arch which lies in an oblique plane and being constructed and arranged to strike between the top and front of the platen, a shift key, and connections between said shift key and said platen constructed and arranged to enable the platen to shift obliquely and in a plane coincident with or parallel to the oblique plane in which the type bar pivots are situated.

"4. The combination of an endwise-movable carriage, a platen mounted thereon and movable transversely to the line of travel and in a direction inclined to a horizontal plane, means for at will so moving the platen transversely, a series of pivoted horizontally disposed key levers extending under the carriage and to the front of the machine, a series of type bars pivoted in front of the platen below the horizontal plane thereof and each of which swings on a single pivot center, and normally inclined away from the platen toward the front of the machine, a segment arranged obliquely to a horizontal plane and on which said type bars are pivoted, two or more characters rigidly secured to each type bar and operative connections between each type bar and its corresponding key lever."

These issues, as formulated, are taken from the specifications of the appellant, Smith; although the purpose of the invention is stated perhaps more explicitly by the appellee, Brooks, who says in his specifications:

"The present invention relates primarily to the type bar and shifting platen mechanism of visible-writing machines.

"One object of the invention is to pivot the type bars so that

they will lie normally obliquely to the horizontal plane of the machine and swing rearwardly and downwardly and strike the platen at a common point between the topmost and foremost portions of the platen, preferably about midway of the front uppermost quadrant of the cylindrical platen.

"Another object of the invention is to provide type bars with two or more types to shift the platen obliquely to receive the upper-case characters."

The appellant, George H. Smith, was the senior applicant. He filed his application on June 16, 1897; and when placed in interference, he relied on this date as that of his conception and constructive reduction to practice.    He took no testimony.

The appellee, Byron A. Brooks, filed his application on February 20, 1900, upward of 2 years and 8 months after the filing date of his opponent.    He alleged conception of the invention by him in 1894, disclosure in 1895, and reduction to practice by the construction and successful operation of a full-sized typewriting machine about the last of June, 1896.    He alone took testimony in support of his claim.

The Examiner of Interferences awarded judgment of priority to Smith.    The Board of Examiners-in-Chief reversed this decision, and rendered an award of priority in favor of Brooks; and the Commissioner of Patents affirmed the decision of the Board of Examiners.    Appeal has now been taken to this court by Smith.

The controversy between the parties has become restricted to a very narrow issue.    Brooks's conception in 1894 and disclosure in 1895 are sufficiently proved; and they are not sought to be controverted by the appellant.    Nor has it been sought to controvert the construction of a machine by Brooks in June of 1896, claimed by him to have been a reduction of the invention to practice.    The contention is that, although this substantially embodied the invention of the issue, it was not a successfully operative machine, and was no more than an abandoned experiment.    The determination of the controversy, therefore, depends on the answer to be given to the question whether the machine of June, 1896, was an operative machine.    For it is not claimed on be-

half of Brooks that he did anything afterward before the filing
of Smith's application on June 16, 1897, toward the reduction
of the invention to practice, and there was no great diligence
then or thereafter on his part to connect any subsequent reduc-
tion to practice with his confessedly prior conception of the in-
vention.

It is a circumstance strongly antagonistic to the contention of
Brooks that he delayed for two years and a half his application
for a patent; that the president of the company, which was en-
gaged in the manufacture of such machines, and with which
Brooks was connected, refused for the time to allow the manufac-
ture of this Brooks machine for sale, although it is stated that
his opposition was due, not to the scheme, but to the form of the
machine, as it then stood; and that it was subsequently in part
dismantled, and some of the parts used in the construction of an-
other machine. The parts so used, however, were not those of
the present invention; and the machine itself yet remains and
appears to be operative so far as this invention is concerned, al-
though it is not now an operative type-writer. But these consid-
erations antagonistic to Brooks, although they raise a strong pre-
sumption against him, and might be fatal to his claim, under
numerous decisions of this court, which it is unnecessary here to
cite, yet may be overcome by sufficient and satisfactory testi-
mony that the machine in question was operated successfully in
the year 1896. The investigation, therefore, is reduced to the
inquiry whether there is sufficient testimony in the case to rebut
the presumptions against Brooks, and to show satisfactorily that
the machine of 1896 was successfully operated, and was conse-
quently a successful reduction of the invention to practice.

There is only one witness, besides Brooks himself, to the fact
that the machine of 1896 was successfully operated in that year.
This is one Charles H. Shepard, a competent mechanic, whose
testimony is not in any manner impeached, and who testified
that, at the time of the completion of the machine, he operated it
to some extent himself, that he operated it on numerous other oc-
casions subsequently, that the machine was complete in all its de-
tails and its operation was fairly satisfactory, and that the ma-

chine was under his own personal observation for several months. This testimony, although it may be subject to some criticism, is substantially to the point; and we see no reason to disregard it. Unless we do disregard it, we see no escape from the conclusion that the Brooks machine of 1896 was a fairly successful embodiment of the invention in question and an operative machine,—although, no doubt, not as successful an embodiment of the idea as the subsequent constructions. But the comparative crudeness of an original construction, as contrasted with subsequent machines, is no ground for the refusal of the merit of operative success. Few or none of the great inventions of the world have been perfect in the first instance; but the credit of invention is not for that reason to be denied to their authors.

But most important, perhaps, in this connection is the fact that the machine of 1896, even in its dismantled condition, was found to be, what the witness Shepard testified it was in 1896, fairly satisfactory in its operation, notwithstanding the fact that, on account of the removal of two or three elements, not involved in the present interference, it is not now a merchantable typewriter.

We think this case falls into the category of *Oliver* v. *Felbel,* 20 App. D. C. 255; *Esty* v. *Newton,* 14 App. D. C. 50; *McBerty* v. *Cook,* 16 App. D. C. 133; and *Roe* v. *Hanson,* 19 App. D. C. 559, rather than into the class which comprises the cases of *Mason* v. *Hepburn,* 13 App. D. C. 86, and *Warner* v. *Smith,* 13 App. D. C. 111.

On behalf of the appellant, comment has been made on the mode of examination of the appellee and his witnesses; and it is sought to discredit their testimony upon the ground that many of the interrogatories propounded to them were of a distinctly leading character and suggested their own answers. But, while this may be a good ground for scanning their testimony with critical care, it is no ground for discrediting it. At the examination of the witnesses there was no counsel present for the appellant. Consequently there was no cross-examination of the witnesses; and there was no attempt of any kind to controvert their statements, although there would seem to have been ample

opportunity for the purpose. It is the law that testimony adduced by leading questions cannot be excluded from consideration, unless objection to it has been promptly interposed; and, if it is admissible in the absence of such objection, we see no reason why it should be refused consideration.

We are of opinion that no ground has been shown to disturb the decision reached in this case by the Commissioner of Patents, as well as by the Board of Examiners-in-Chief in the Patent Office; and we think that the Commissioner's decision should be affirmed, and judgment of priority of invention awarded to Brooks.

The clerk of the court will certify this opinion, and the proceedings of the court in the premises to the Commissioner of Patents, according to law. *Affirmed.*